STACY, C. J., dissenting.
E. C. Carraway, being sick with the "flu," on 12 October, 1918, executed in his own handwriting a paper-writing, on an attached leaf in an account book containing accounts and other writing, in words and figures as follows: "I will to Gordon B. Carraway all my property on earth personal 
real estate. I appoint J. H. Mewborn as executor without bond. I am sound mintly [mentally] and physically. This the 12 Oct. 1918. E. C. Carraway (Seal). "
A witness testified: "He asked me to get him his account book, and his pen and ink. He was in bed and nobody was in the room with him but me. After I gave him the book he wrote some in the book I gave him. After he had written in the book he gave it to me and told me to put it in the bureau drawer, and I put it in there. In that drawer where I put the book he kept bills and other things, papers of his and things of that kind. After I put the book in the drawer I locked it. He kept the key to the drawer. It was the drawer he kept his valuable papers in. "
E. C. Carraway died the following day, after making the will. Gordon B. Carraway was his brother. The caveat to this will was filed on 13 October, 1925.
The real estate devised by the will to Gordon B. Carraway was known as "Monticello," the home place of the late W. W. Carraway in Lenoir County, N.C.
A witness testified: "I think probably there is 150 acres in this plantation of E. C. Carraway's. It was the original homestead of the family. At the time of this will it was worth $150 or $200 per acre — a valuable farm. The finest farm in the county, I think. It is in Vance Township. It is the most beautiful spot in the county. This farm is now owned by a widow, Mrs. Hattie Scarboro. " *Page 743 
The issues submitted to the jury, and their answers thereto, were as follows:
"1. Is the paper-writing offered for probate and each and every part thereof in the genuine handwriting of E. C. Carraway, deceased? Answer: Yes.
2. Was the paper-writing found among the valuable papers and effects of the deceased? Answer: Yes.
3. At the time of the execution of said paper-writing, did E. C. Carraway have sufficient mental capacity to make a will? Answer: Yes.
4. Was the execution of said paper-writing procured by undue influence as alleged by the caveators? Answer: No.
5. Is the said paper-writing and each and every part thereof the last will and testament of E. C. Carraway? Answer: . . . . . . . . and the court having instructed the jury that they need not answered the fifth the court, upon the coming in of the verdict having answered the fifth issue Yes, as a matter of law upon the answers of the jury to the other issues."
After carefully reading the entire evidence, we think it sufficient and ample on all the issues to have been submitted to the jury to establish a holograph will under the decisions of this Court. The caveators introduced no evidence. The credibility of the evidence was for the jury to determine. We can see no error in the charge of the court below on all the issues. The jury having answered the first four issues in favor of propounders, it follows as a matter of course that the paper-writing and each and every part thereof was the last will and testament of E. C. Carraway.
Upon the coming in of the verdict and the jury having answered the first four issues in favor of the propounders, the court below as a matter of law answered the fifth issue "Yes. " Conceding, but not deciding, that this was error, it was not material or prejudicial. On the whole record we find
No error.
STACY, C. J., dissenting. *Page 744